UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TIMOTHY WAYNE MURRAY | CIVIL ACTION NO.:  10-1755 |
| | SECTION:  "A" |
| VERSUS | MAGISTRATE:  03 |
| RODNEY JACK STRAIN, JR., ET AL. | JURY DEMAND |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
PURSUANT TO RULE 56(b)
OF FEDERAL RULES OF CIVIL PROCEDURE**

**MAY IT PLEASE THE COURT:**

**Introduction**

Plaintiff Timothy Wayne Murray has brought this lawsuit, based on 42 U.S.C. § 1983, against the following defendants: Rodney J. Strain, Jr., individually and in his capacity as Sheriff of St. Tammany Parish ("Sheriff Strain"); five of Sheriff Strain's deputies: Deputy Ben Godwin, Sergeant Jeremy Church, Corporal Robert Edwards, Deputy First Class Ben Sadowski, and Deputy Jeff Brady; and four staff physicians employed by Sheriff Strain with the St. Tammany Parish Jail Medical Department: Dr. Richard Inglese, Dr. Marcus Dileo, Dr. Gary French, and Dr. Sureshkunar Bhatt.

This *pro-se* prisoner suit seeks redress for alleged civil-rights violations based on claims of excessive force and insufficient medical care.  At all relevant times herein, the plaintiff was a pre-trial detainee charged with first-degree murder.  He was in the custody of Sheriff Strain and being held at the St. Tammany Parish Jail ("the Jail").  On June 18, 2009, he was able to escape from the Jail, resulting in an intense man-hunt by personnel of the St. Tammany Parish Sheriff's Office ("the STPSO") as well as other cooperating law-enforcement agencies.  On June 21, 2009, the plaintiff was recaptured and transported back to the Jail by STPSO deputies, namely, defendants Godwin, Church, Edwards, Sadowski, and Brady.  He now seeks to recover damages against the defendants based on allegations of civil-rights violations related to that recapture.

Specifically, the plaintiff claims to have been subjected to an excessive use of force at the hands of the five deputy-defendants (Rec. doc. 1, at ¶¶ 5-7).  He also asserts that he received deficient and inadequate medical care from the four physician-defendants for the injuries he allegedly sustained in the recapture and in a later 'slip-and-fall' (*Id.*, at ¶¶ 8-10).  As to Sheriff Strain, the plaintiff makes vague allegations of an "ongoing pattern and practice" of constitutionally-deficient conduct (*Id.*, at ¶ 15).  Finally, the plaintiff raises a state-law claim of battery against the deputy-defendants, and he also claims that Sheriff Strain should be held vicariously liable under state law for the actions of his deputies (*Id.*, at ¶¶ 14-15).

While the defendants all vehemently deny the substance of the plaintiff's factual allegations against them, the instant motion is based on simple procedural grounds.  First, the plaintiff's § 1983 claims against the defendants are barred by his failure to comply with the conditions of the Prison Reform Litigation Act by failing to exhaust his administrative

remedies prior to filing this lawsuit.  Second, his federal-law claims against the defendants

are barred by application of the qualified-immunity doctrine.  In addition, the plaintiff's

assertion of *Monell*-type liability against Sheriff Strain has an inadequate factual and legal

basis.  Consequently, the plaintiff's federal-law claims against the defendants are legally

unjustified and without merit, and they should be dismissed pursuant to this Motion.  The

Court should then either dismiss the remaining state-law claims on the same grounds as

the federal-law claims, or it should decline to exercise pendent jurisdiction over the state-

law claims, and in either way dismiss the suit entirely.

The matter has been pending for more than a year and a half, since June 17, 2010,

and the plaintiff has been afforded the opportunity to conduct full discovery.  In addition,

the defendants' arguments herein are largely based on the application of legal principles, as

opposed to contested factual issues, and are unlikely to be impacted by further discovery.

After this Honorable Court reviews the record of this matter in light of this Motion and the

moving defendants' supporting argument, and it notes the total lack of relevant

countervailing evidence able to be tendered by the plaintiff, the Court should grant the

instant motion and dismiss this suit.

## **Summary of Relevant Facts**

The relevant underlying facts surrounding Plaintiff's Complaint began on June 18,

2009, when the plaintiff and three other inmates were able to defeat a poorly-designed

window and escaped from the Jail.[1]   STPSO deputies and personnel from other area law-

---

1    This factual summary is based on Defendants' Statement of Uncontested Material Facts, also filed in
connection with the instant motion.  That Statement contains numerous citations and references to
the various exhibits supportive of each particular factual assertion.  In the interest of efficiency and
clarity, those citations and references are not repeated here.

enforcement agencies spent several days searching for and tracking the plaintiff until he was finally spotted by defendants Dy. Edwards and DFC Church in the early morning hours of June 21, 2009, hiding under a log in a dark wooded area.

Plaintiff specifically alleges in his Complaint that as he was coming out from under the log, he was attacked by canine "Flex" by orders from Dy. Edwards and that he was wrestled to the ground and bitten numerous times by the canine.  He further claims that Dy. Church then attacked him and struck him in the face several times in the face with his flashlight, "splitting the plaintiff's lip and causing numerous other injuries," and that defendants Brady, Sadowski, and Godwin "all either joined in on the beating, or witnessed it and did nothing to stop it."  Plaintiff also suggests in his complaint that he was attempting to surrender peacefully.  But all these claims are specifically and diametrically disputed in the reports prepared by the deputies and provided in the arrest report.[2]

Furthermore, plaintiff asserts that when he was transported back to the Jail after his recapture, he failed to receive medical treatment until the following morning.  He also makes claims that, following the escape, he was refused proper medical treatment at the Jail by Doctors French, DiLeo, and Inglese "as retribution for his escape," specifically for alleged injuries caused from "slipping into an open drain."  But plaintiff failed to exhaust all administrative remedies available to him prior to filing his lawsuit.  In addition, the uncontested facts show that plaintiff was not denied proper medical treatment; to the contrary, the plaintiff received appropriate medical care for the alleged injuries his sustained during his capture and then later from his slip-and-fall.

---

[2]     As also noted in the report (Exhibit "A"), plaintiff was charged with Aggravated Escape and Resisting with Violence and he then subsequently pled guilty to Simple Escape as part of a plea bargain (Exhibit "F").

Under the policies and procedures of the Jail as established by Sheriff Strain, an inmate can request medical attention from the medical department in several different ways, including filling out a medical request form and dropping it in a box where the forms are then picked up by the medical department and not seen by any deputy, by asking a deputy to be taken to the medical department, or by asking a nurse from the medical department who comes on each tier or dormitory of the jail three times a day.  The Jail has a complaint procedure and grievance procedure in place and any complaint or grievance received concerning medical treatment provided to inmates is forwarded directly to the medical department for their response in accordance with the Jail's grievance procedure.

The affidavit of Dr. Richard D. Inglese clearly establishes that the plaintiff did in fact receive appropriate medical care and plaintiff's jail medical records show that he was seen numerous times by doctors and other medical personnel who were not indifferent to his medical needs.  Plaintiff has not yet tendered any expert opinion or any other evidence whatsoever other than his own allegations to challenge or contradict Dr. Inglese's conclusions.

<u>**Summary Of Supporting Evidence**</u>

In support of this motion, the defendants submit the following documents:

1.    STPSO Complaint Arrest Affidavit and related statements, all bearing number 2009-012464 and prepared by the defendants deputies in connection with the plaintiff's recapture (Exhibit "A");

2.    Certified copies of the complete Jail administrative file regarding the plaintiff (Exhibit "B");

3.    Certified copies of the complete Jail Medical Department file regarding the plaintiff (Exhibit "C");

4.    Affidavit of STPSO Major Greg Longino, the Warden of the Jail, with attached copy of the summary of complaint procedure and grievance procedure in

place at the Jail, and blank complaint form and forms used in that grievance process (Exhibit "D");

5.   Affidavit of defendant Dr. Inglese, with attached copies of his C.V. and a narrative report detailing the plaintiff's medical care at the Jail (Exhibit "E");

6.   Minute entry of 6/1/2010 court proceedings regarding the plaintiff before Judge Richard A. Schwartz, 22nd Judicial District Court, Parish of St. Tammany, State of Louisiana (Exhibit "F");

7.   Minute entry of 9/3/2010 court proceedings regarding the plaintiff before Judge William J. Crain, 22nd Judicial District Court, Parish of St. Tammany, State of Louisiana (Exhibit "G"); and

8.   Minute entry of 6/24/2009 court proceedings regarding the plaintiff also before Judge Crain (Exhibit "H").

It is respectfully submitted that these documents, along with the pleadings in this matter, clearly and fully support the facts set out in this Motion and serve to demonstrate that the claims being made herein by the plaintiff are legally deficient so as to call for the dismissal of plaintiff's lawsuit.

## Law and Argument

### 1.   *The Standard For Granting Summary Judgment*

In considering a motion for summary judgment, this Honorable Court should grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  *See also Nickell v. Beau View of Biloxi, L.L.C.*, 636 F.3d 752, 754 (5th Cir. 2010); *Roberts v. Cardinal Services, Inc.*, 266 F.3d 368, 373 (5th Cir. 2001), *cert. denied* 535 U.S. 954, 122 S.Ct 1357, 152 L.Ed.2d 353 (2002); *Alfonso-Ferro v. Stolthaven New Orleans, L.L.C.*, 2005 WL 1309133, *2 (E.D.La. 2005).

As a general rule, the moving party has the initial burden of establishing that there are no issues of material fact and that it is entitled to judgment in its favor as a matter of law.  *Breen v. Texas A&M University*, 485 F.3d 325, 331 (5th Cir. 2007); *Rivera v. Houston*

*Independent School District,* 349 F.3d 244, 246-47 (5th Cir.2003).  Thus, the party moving for summary judgment "bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Adams v. Travelers Indemnity Company of Connecticut*, 465 F.3d 156, 163 (5th Cir. 2006).  *See also Taita Chemical Company, Ltd. v. Westlake Styrene Corporation*, 246 F.3d 377, 385 (5th Cir. 2001).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion.  Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude summary judgment.  *Taita Chemical*, *supra*.  *See also Roberts*, *supra*; *Condiff v. R.D. Werner Company, Inc.*, 2003 WL 21977167, *1 (E.D.La. 2003).

Once the mover's initial burden is satisfied, the party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' and must designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corporation v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), quoting Fed.R.Civ.P. 56(e).  *See also Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006); *In re Ark-La-Tex Timber Company, Inc.*, 482 F.3d 319 (5th Cir. 2007).  A fact is material only when it might affect the outcome of the suit under the governing law, and a fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party.  *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

Put another way, the plaintiff in this matter cannot simply rest on the allegations in his pleadings in the face of a properly-supported and -reasoned summary judgment motion; "there is no issue for trial unless there is sufficient evidence favoring the

nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted." *Thomas v.*

*Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999), quoting *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). *See also Celotex*

*Corporation*, *supra* at 325-26, 106 S.Ct. at 2554. In addition, conclusory allegations

unsupported by specific facts will not prevent granting of summary judgment; the plaintiff

cannot rest on his allegations to get to a jury without any significant probative evidence

tending to support the complaint. *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010),

*cert. denied* --- U.S. ---, 131 S.Ct. 355, 178 L.Ed.2d 149 (2010); *National Association of*

*Government Employees v. City Public Service Board*, 40 F.3d 698, 713 (5th Cir. 1994).

  In fact, the Fifth Circuit requires the nonmoving party to tender what it has called

"significant" and "probative" evidence in order to rebut a properly-supported summary-

judgment motion. *Whitt v. Stephens County*, 529 F.3d 278, 283 n. 8 (5th Cir. 2008). And,

once again, conclusory allegations and unsubstantiated assertions by the nonmovant

simply are not sufficient. *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 345

(5th Cir. 2007); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). Since "conclusory

allegations" and "unsubstantiated assertions" make up the bulk of the plaintiff's claims in

this case, this case is one that is especially ripe for summary judgment.

  As the Fifth Circuit has declared: "After the nonmovant has been given the

opportunity to raise a genuine factual issue, if no reasonable juror could find for the

nonmovant, summary judgment will be granted." *DIRECTV Inc. v. Robson*, 420 F.3d 532,

536 (5th Cir. 2005). *See also Caboni v. General Motors Corporation*, 278 F.3d 448, 451 (5th

Cir. 2002); *Texaco Exploration and Production, Inc. v. Amclyde Engineered Products*, 2008

WL 957652, *5 (E.D.La. 2008). Also, the Court has no duty to search the record for triable issues. *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Mere assertion of a factual dispute unsupported by probative evidence will not prevent summary judgment. *Abbot v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir. 1993). In fact, according to the Fifth Circuit, factual controversies should be construed in the light most favorable to the nonmovant only if both parties have introduced evidence showing than an actual controversy exists. *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998).

Thus, in order to prevail on the instant motion, the defendants need not resolve every possible factual dispute or answer every possible question about the plaintiff's allegations. They are instead required to present, address, and demonstrate only those uncontradicted facts necessary to defeat an essential element the plaintiff's cause of action, in light of the analysis discussed below. Because they clearly can do so in this case, the instant motion should be granted and the plaintiff's suit against the defendants should be dismissed.

### 2.   *Plaintiff Failed To Exhaust The Administrative Remedies Available To Him Prior To Filing Suit*

As is collectively demonstrated by plaintiff's Jail administrative file, Jail medical records, the affidavit testimony of Warden Longino, and the affidavit testimony of Dr. Inglese, plaintiff unquestionably failed to exhaust the administrative remedies available to him at the Jail before filing his complaint. The applicable provision of the Prison Litigation Reform Act of 1996 ("PLRA") reads as follows:

> No action shall be brought with respect to prison conditions under § 1983 of this title or any other law or any other Federal law by a prisoner confined in

a jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). *See also Johnson v. Ford*, 261 Fed.Appx. 752, 755 (5th Cir. 2008); *Campfield v. Tanner*, 2011 WL 4368723, * 2 (E.D.La. 2011).

According to the U. S. Supreme Court, the purpose of the PLRA is "to eliminate unwarranted federal-court interference with the administration of prisons, and thus [it] seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387, 165 L.Ed.2d 368 (2006)(internal quotations omitted).

In *Underwood v. Wilson*, 151 F.3d 292, 293 (5th Cir. 1998), the Fifth Circuit, while holding that the requirement to exhaust administrative remedies was not jurisdictional, held that if a plaintiff had not exhausted his administrative remedies, dismissal with prejudice was the correct action under the statute. The court pointed out that if a plaintiff filed suit before exhausting his administrative remedies, then plaintiff sought relief to which he was not entitled. *See also Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010)(exhaustion is a "threshold" issue); *Magee v. Crowe*, 2011 WL 1437183, ** 5-6 (E.D.La. 2011).

The Fifth Circuit, in *Wendell v. Asher,* 162 F.3d 887 (5th Cir. 1998), specifically held that "prison condition" actions required the application of the exhaustion requirements set forth in § 1997e(a). In *Booth v. Churner,* 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001), the U. S. Supreme Court upheld the district court's dismissal of plaintiff's § 1983 action by holding that exhaustion of all remedies was mandatory prior to filing his suit. The Court further held that exhaustion was required regardless of the relief available or sought.

Although *Booth* is a case dealing solely with a prisoner's excessive force claim, the Fifth Circuit has made it clear on several occasions that *Booth* expressed that exhaustion of available remedies are required regardless of the nature of the prisoner's claim about the correctional facility and regardless of the relief the prisoner seeks.  For example, in *Wright v. Hollingsworth,* 260 F.3d 357 (5th Cir. 2001), the court declared:

> Quibbles about the nature of a prisoner's complaint, the type of complaint, the type of remedy sought, and the sufficiency or breadths of prison grievance procedures were laid to rest in *Booth.*

The U. S. Supreme Court in *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), made it clear that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  The Fifth Circuit cited *Porter* in its decision in *Clifford v. Gibbs*, 298 F.3d 328, 330 (5th Cir. 2002), affirming another division of this Honorable Court's decision dismissing an inmate's failure-to-protect case for failure to exhaust administrative remedies.

In this case, as stated by Warden Longino (Exhibit "D"), the Jail had an inmate complaint procedure and an administrative remedy procedure in place at the time the alleged incident occurred and that these procedures are found in the inmate handbook which is given to every inmate that is booked into the Jail.  Warden Longino's affidavit further establishes that both the complaint procedure and grievance procedure are posted in every housing unit at the Jail, including the housing unit where the plaintiff was housed during his incarceration there.  *Id.*  In addition, the affidavit of Warden Longino establishes that at the time the events giving rise to this lawsuit occurred, copies of the complaint forms and grievance forms were available in all housing areas of the jail, including the area

where the plaintiff was being housed.  *Id.*

A review of plaintiff's administrative jail file (Exhibit "B") and medical records (Exhibit "C") indicate that plaintiff did not file a complaint or grievance regarding his claim that he had been denied medical treatment for the alleged injuries he sustained as a result of his escape in June 2009 or for the alleged slip and fall at the Jail in May 2010.  Plaintiff's jail medical records show that plaintiff did in fact submit one sick call request inquiring as to why his medication had been cut off and suggests that these had been done after his escape.  Also, a complaint form concerning his claim that he had been denied medical treatment after his fall in the shower on May 16, 2010, can be found in his jail administrative file, along with the detailed response to the complaint by Dr. Inglese.  But it is an undisputed fact that the plaintiff never filed a grievance concerning his claim that he was denied medical treatment while incarcerated in the Jail or that the alleged lack of treatment was in retaliation for his escape, and these facts are further supported by the affidavits of Dr. Inglese (Exhibit "E") and Warden Longino (Exhibit "D").

Even assuming that plaintiff had filed a grievance (which is denied), the filing of the purported grievance at most *initiated* the grievance procedure; however, it did not *exhaust* his remedies as required by 42 U.S.C. 1997e(a).  In *Underwood v. Wilson,* 151 F.3d 292, 294, (5th Cir. 1998)(*quoting* Webster's New Int'l Dictionary 796, (3rd ed. 1981)), the Fifth Circuit defined *exhaust* as "to take complete advantage of (legal remedies)."   Clearly, the filing of a First Step grievance does not constitute exhaustion since § 1997e(a) requires that an inmate "pursue the grievance remedy through conclusion" in a multi-step grievance process.  *Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir. 2001).

Another division of this Honorable Court has expressly determined that failure to receive a response does not relieve a prisoner from his obligation to pursue all available administrative remedies to their conclusion.  In *Cassisi v. St. Tammany Parish Medical Staff, et al.,* USDC, E.D.La., No. 01-3452 "J" (1), the court granted defendants' motion for summary judgment and dismissed plaintiff's case based on plaintiff's failure to exhaust his administrative remedies and held as follows:

> To allow plaintiff, who clearly did not proceed beyond the first step of the multi-step administrative remedy procedure, to proceed directly to federal court would undermine the congressional intent of § 1997e(a).

*Id.*, at Rec. doc. 66, p. 9.

Thus, it is undisputed that even if plaintiff had filed a grievance concerning his denial of medical treatment claims (which is denied), plaintiff failed to pursue any supposed grievance to the next step of the grievance process.  As a result, it is clear that this Court should hold the same in the instant case and grant defendants' motion for summary judgment and dismiss plaintiff's claims.

**3.   *Defendants Are Entitled To Qualified Immunity***

A qualified immunity defense in civil rights litigation "serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law."  *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *Thompson v. Upshur County,* 245 F.3d 447, 456 (5th Cir. 2001); *see also Kinney v. Weaver,* 367 F.3d 337, 349 (5th Cir. 2004)(en banc)(discussing the important goals served by the qualified immunity doctrine).  "When a defendant invokes qualified immunity, the burden is on the plaintiff to

demonstrate the inapplicability of the defense." *McClendon v. City of Columbia,* 305 F.3d

314, 323 (5th Cir. 2002). *See also Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009).

In addition, in the face of the assertion by a defendant public official of the defense

of qualified immunity, a § 1983 plaintiff must comply with a heightened pleading standard.

This heightened pleading standard "requires more than conclusory assertions. It requires

claims of specific conduct and actions giving rise to a constitutional violation." *Burge v.*

*Stalder*, 54 F. App'x 793 (5th Cir. 2002); 2002 WL 31845179, *3, citing *Baker v. Putnal,* 75

F.3d 190, 195 (5th Cir.1996). *See also Harold v. City of New Orleans*, 2008 WL 5216223, *2

(E.D.La. 2008)(Duval, J.).

To discharge these burdens, a plaintiff must satisfy a two-prong test, which after

*Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) can be

considered in either sequence.  According to the first prong, the plaintiff must adequately

establish that the defendant committed a constitutional violation under current law.  *See,*

*e.g., Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); *Palmer v.*

*Johnson,* 193 F.3d 346, 351 (5th Cir. 1999).  Second, the plaintiff must prove that the

defendants' actions were objectively unreasonable in light of the law that was clearly

established at the time the actions complained of occurred.  *Atteberry v. Nocona General*

*Hospital*, 430 F.3d 245, 253 (5th Cir. 2005).  This bifurcated legal standard is designed both

to promote clearer standards for official conduct and to spare defendants unwarranted

liability and court costs.  *See Wilson,* 526 U.S. at 609.  In this matter, while the plaintiff has

alleged in a conclusory and generalized manner the existence of a constitutional violation

and the unreasonableness of the defendants' actions, he has utterly and completely failed

to offer anything at all beyond his bald allegations in satisfaction of the two-pronged test.

Government officials performing discretionary functions are entitled to qualified immunity from civil liability to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). For qualified immunity purposes, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Johnson v. Johnson,* 385 F.3d 503, 524 (5th Cir.2004)(quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). Put in slightly difference words, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Lytle v. Bexar County, Texas*, 560 F.3d 404, 410 (5th Cir. 2009).

Clearly, the use of force by the five deputy-defendants in this case was made in a non-malicious effort to maintain control of a possibly volatile situation in dealing with an aggressive and combative escaped prisoner. The facts in this case show that the force used by these deputies was reasonable, necessary, and limited in both scope and time-frame (Exhibit "A"). The question of whether these deputies have the defense of qualified immunity is determined by the standard set forth by the United States Supreme Court:

> Where a prison security measure is undertaken to resolve a disturbance, such as occurred in this case, that indisputably poses significant risks to the safety of inmates and prison staff, we think the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."

*Whitley v Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d. 251,261 (1986).

When determining the reasonableness of the force used, the core inquiry is whether the

force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

sadistically to cause harm.  *Baldwin v. Stalder,*137 F.3d 836, 838 (5th Cir.1998); *Groves v.*

*Gusman*, 2011 WL 1459775, *7 (E.D.La. 2011)(Roby, M.J.).

It is undisputed in the instant case, apart from the plaintiff's own bald and

completely unsubstantiated allegations, that the force used by defendant deputies was

used in good faith to defend and protect themselves and others against a physically

aggressive and combative inmate.  It is also undisputed that the force was not used

maliciously or sadistically, so as a matter of law, defendants are entitled to the defense of

qualified immunity.  *Colston, v. Barnhart*, 130 F.3d 96 (5th Cir. 1997); *Rankin v. Klevenhagen*,

5 F.3d 103 (5th Cir. 1993); *Fraire v. City of Arlington*, 957 F.2d 1268 (5th Cir. 1992).

The defense of qualified immunity is a defense to protect the defendants not only

against liability but also against suit.  *Spann v. Rainey*, 987 F.2d 1110 (5th Cir. 1993).  In

order to overcome a defense of qualified immunity, plaintiff's complaint must state more

than mere conclusions.  The Fifth Circuit has said that a "heightened" standard is necessary.

*Babb v. Dorman* 33 F.3d 472, 475 (5th Cir. 1994), *citing Elliott v. Perez*, 751 F.2d 1472 (5th

Cir. 1985).  A plaintiff must plead with particularity facts that if proven would defeat the

defense*.  Elliott*, at 1479.  Plaintiff has made only unsubstantiated conclusionary allegations

against the defendants and has failed to otherwise establish any basis of fact that would

support his claims.

Furthermore, the Fifth Circuit has held that a police officer was entitled to qualified

immunity in an excessive force § 1983 claim when their actions are objectively reasonable.

*Wagner v. Bay City,* 2000 WL 1285264 (5th Cir. 2000).  In *Wagner,* the Court held that the actions of the officers were objectively reasonable where the arrestee had resisted arrest and struck an officer with his fists, and the police officers responded by spraying the arrestee with pepper spray, facing him face down in the pavement to handcuff him and placed a shin across his back to hold him down and placed him on his stomach in the patrol car to transport him to jail.

The arrest report and the detailed statements contemporaneously prepared by the deputies and submitted in support of this motion (Exhibit "A") clearly establish that the force used by the deputies and canine during the capture of an escaped prisoner who was believed to be armed was reasonable and necessary to gain control of a combative and resistive subject and to take control of a potentially volatile situation.  Based on *Wagner* and the cases like it*,* the actions of the deputies in this case were clearly objectively reasonable and there is absolutely no evidence, other than the plaintiff's own broad and self-serving assertions, that these deputies acted maliciously or sadistically; therefore, deputy-defendants are entitled to summary judgment as a matter of law.

As to the plaintiff's claims against the physician-defendants, the constitutional rights of a pretrial detainee certainly may be violated if his serious medical needs are met with deliberate indifference on the part of penal authorities. *Thompson v. Upshur County, Texas,* 245 F.3d 447, 457 (5th Cir.2001). But the Fifth Circuit has held:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate

a significant risk that the official should have perceived, but did not is
insufficient to show deliberate indifference.

*Domino v. Texas Department of Criminal Justice,* 239 F.3d 752, 756 (5th Cir.2001)(quotation

marks and citations omitted).  *See also Lauga v. St. Tammany Parish Sheriff's Office*, 2010

WL 1559089, *4 (E.D.La. 2010).  As the Fifth Circuit has also noted:

> Unsuccessful medical treatment, acts of negligence, or medical malpractice
> do not constitute deliberate indifference, nor does a prisoner's disagreement
> with his medical treatment, absent exceptional circumstances. Furthermore,
> the decision whether to provide additional treatment is a classic example of a
> matter for medical judgment.

*Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir.2006)(footnote and quotation marks

omitted).

     The evidence tendered in connection with this Motion makes it clear that, not only

were the physician-defendants not deliberately indifferent to the plaintiff's medical needs

during his incarceration, but to the contrary, the plaintiff received a high level of medical

attention during that time.  See Exhibit "D" (affidavit/medical abstract of Dr. Inglese);

Exhibit "C" (plaintiff's jail medical records).  This direct evidence is further buttressed by

the ruling of the state district court in addressing a motion for medical care filed by the

plaintiff in his state criminal proceeding, wherein the judge found that the plaintiff had

offered absolutely no evidence of the inadequacy of the Jail Medical Department to meet his

constitutionally-mandated medical needs.  Exhibit "H" (minute entry).  In addition, "a

pretrial detainee's constitutional right to medical care is violated only if his *serious* medical

needs are met with *deliberate indifference* on the part of penal authorities."  *Carter*, *supra* at

*3 (emphasis in original).  Here, the plaintiff has not established that he suffered any real

and lasting physical harm from the deprivations he alleges.

**4.**   ***Plaintiff's Individual-Capacity and Official-Capacity Claims Against Sheriff Strain Are Legally Deficient and Should Be Dismissed.***

It is well established that there is no liability on a supervisor's part under the civil rights law, including § 1983, based on a theory of *respondeat superior*.  *Monell v. Dep't of Social Services of New York City,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005); *Eason v. Thaler,* 73 F.3d 1322, 1327 (5th Cir. 1996).  Thus, Sheriff Strain cannot be held liable under § 1983 pursuant to a theory of *respondeat superior* or simply because of his general supervisory authority over his deputies.  *Oliver v. Collins*, 902 F.2d 278, 281 (5th Cir. 1990); *Harvey v. Andrist*, 754 F.2d 569, 572 (5th Cir. 1985), *cert. denied* 471 U.S. 1126, 105 S.Ct. 2659, 86 L.Ed.2d 276 (1985).  In a case somewhat similar to this one, although admittedly less factually intense, another section of this Honorable Court concluded that a prisoner whose § 1983 claim was based upon a slip-and-fall in the jail shower had failed to establish the necessary "personal involvement" on the part of Sheriff Strain.  *Wetzel v. St. Tammany Parish Jail*, 610 F.Supp.2d 545, 550 (E.D.La. 2009).  *See also Lathers v. Nelson Coleman Correctional Center*, 2010 WL 1489903, *5 (E.D.La. 2010).  Thus, to the extent that the plaintiff's claims are based or dependent upon Sheriff Strain's personal involvement in those allegations, they must fall.

Of course, as is true with most general rules, this requirement of personal involvement and rejection of vicarious liability is subject to exceptions that should be addressed.  First, it is acknowledged that under § 1983 official-capacity claims (as opposed to individual-capacity claims), an official such as Sheriff Strain can be held liable if it can be shown that he had in place "a policy or procedure that caused [the plaintiff's] injury."  *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007), *cert. denied* 555 U.S. 813, 129 S.Ct. 42, 172

L.Ed.2d 21 (2008); *Davis v. Evangelist*, 2009 WL 2447897, *6 (E.D.La. 2009).  But, it is also

true that "[a] plaintiff may not infer a policy merely because harm resulted from some

interaction with a governmental entity."  *Colle v. Brazos County, Texas*, 981 F.2d 237, 245

(5th Cir. 1993).  Rather, he must specifically identify the policy or custom that allegedly

caused the complained-of deprivation of his constitutional rights.  *Murray v. Town of*

*Mansura*, 76 Fed.Appx. 547, 549, 2003 WL 22135637 (5th Cir. 2003); *Carter v. Strain*, 2009

WL 3231826, *2 (E.D.La. 2009).  As explained by the Fifth Circuit:

> In order to hold a municipality or a local government unit liable under
> Section 1983 for the misconduct of one of its employees, a plaintiff must
> initially allege that an official policy or custom was a cause in fact of the
> deprivation of rights inflicted. To satisfy the cause in fact requirement, a
> plaintiff must allege that the custom or policy served as a moving force
> behind the constitutional violation at issue or that [his] injuries resulted from
> the execution of an official policy or custom. The description of a policy or
> custom and its relationship to the underlying constitutional violation,
> moreover, cannot be conclusory; it must contain specific facts.

*Spiller v. City of Texas City Police Department*, 130 F.3d 162, 167 (5th Cir.1997) (quotation

marks, brackets, and citations omitted).

In this case, the plaintiff does make a vague and conclusory assertion regarding

"pattern and practice."  *See* Rec. doc. 1, at ¶ 15.  But, at no point in his pleading does the

plaintiff go beyond that phrase itself to actually specify the particular "policy", "practice", or

"custom" in question, nor has such specification occurred in the discovery process.  Clearly,

the plaintiff's bald and general characterizations, without any elaboration, fail to meet the

test that a § 1983 official-capacity claim against a governmental official must "state with

factual detail and particularity the basis of the claim."  *Babb v. Dorman,* 33 F.3d 472, 477

(5th Cir. 1994).  It also certainly does not satisfy the "specific facts" requirement set out by

the *Spiller* court as to a policy-and-procedure claim.  *See Brown v. Gusman*, 2010 WL

2545958, *2 (E.D.La. 2010); *see also Washington*, *supra* at *6, where the court noted that

the plaintiff had failed to "specifically identify an ordinance, regulation, or well-settled

custom or policy in violation of her constitutional rights." And the plaintiff also fails to

explain how any specific policy or procedure "served as a moving force" behind a particular

alleged constitutional violation. In *Davis v. Evangelist*, *supra*, another division of this Court

declared in a similar factual context that "[t]he plaintiff has pointed to no evidence to

support this blatantly conclusory assertion." The same is true here.

To summarize, the plaintiff has not made any allegations that Sheriff Strain himself

was personally involved in the asserted constitutional deprivations and, under § 1983,

Sheriff Strain cannot be vicariously liable for any actions of his subordinates or employees.

To the extent that the plaintiff's allegations raise the issues of inadequate policies &

procedures, failure-to-train, or any other *Monell*-type claim and thereby fall outside of this

general rule, the allegations fall far short of the specificity requirement set out by *Spiller*

and no supportive facts whatsoever have been identified or adduced. For any or all of

these reasons, the plaintiff's § 1983 claims against Sheriff Strain should be dismissed.

### 5.    *Plaintiff's State-Law Claims*

The state-law claim for battery asserted by the plaintiff in this matter should also be

dismissed. According to Louisiana law, the use of force is justified and serves as a defense

to battery "[w]hen the offender's conduct is a reasonable accomplishment of an arrest

which is lawful under the Code of Criminal Procedure." LSA-R.S. 14:18(2). As explained

above, the deputy-defendants' use of force in the recapture of the plaintiff was fully

"reasonable" in nature and occurred in the context of the lawful arrest of a dangerous

escapee. In the strictest of alternatives, the plaintiff's state-law claims should be dismissed

because, once his federal-law claims have been rejected, no grounds for federal-court jurisdiction in this matter would remain.

### Conclusion

For the clear and uncontroverted reasons set out above, the plaintiff's assertion of claims against the defendants pursuant to 42 U.S.C. § 1983 is barred by the exhaustion-of-administrative-remedies requirement of the PLRA and/or by application of the qualified-immunity doctrine to the facts of this case.  And since § 1983 is the only basis for federal jurisdiction in this case, any remaining state-law claims should be dismissed.  Thus, as supported and documented in the attached Statement of Uncontested Material Facts and the accompanying exhibits, the defendants request this Honorable Court to grant their Motion for Summary Judgment, for the specific grounds urged herein, and dismiss plaintiff's suit against them, with prejudice and at plaintiff's cost.

Respectfully submitted:

**TALLEY, ANTHONY, HUGHES &**
  **KNIGHT, L.L.C.**

BY:   /s/ GARY L. HANES
    CHARLES M. HUGHES, JR. (#14382)(T.A.)
    RYAN G. DAVIS (#29138)
    GARY L. HANES  (#14341)
2250 7th Street
Mandeville, LA  70471
Phone: (985) 624-5010
Facsimile: (985) 624-5306
Email: gary.hanes@talleyanthony.com

Attorneys for Defendants
Rodney J. Strain, Jr., in his capacity as
Sheriff of St. Tammany Parish, Richard D.
Inglese, M.D., Gary French, M.D., Marcus
Dileo, M.D., Sureshkunar Bhatt, Deputy
Jeremy Church, Deputy Jeff Brady, Deputy
Ben Sadowski, Deputy Ben Godwin, and
Deputy Robert Edwards

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2012, a copy of the foregoing Memorandum of Law in Support of Defendants' Motion for Summary Judgment was filed electronically with the Clerk of Court using the CM/ECF system.  I also certify that a photocopy of this filing and notice of electronic filing will be mailed this date to plaintiff herein, as a pro se non-CM/ECF participant, via U.S. Mail, postage prepaid, at the address on file with the Clerk.

    /s/ Gary L. Hanes
      GARY L. HANES