UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TIMOTHY WAYNE MURRAY | CIVIL ACTION |
| VERSUS | NO: 10-1755 |
| RODNEY JACK STRAIN ET AL | SECTION: "A" (3) |

### ORDER

Before the Court is a **Motion for Summary Judgment Pursuant to Rule 56(b) of the Federal Rules of Civil Procedure (Rec. Doc. 47)** filed by Defendants Rodney J. Strain, Jr. individually and in his capacity as Sheriff of St. Tammany Parish ("Sheriff Strain"), Ben Godwin, Jeremy Church, Robert Edwards, Ben Sadowski, Jeff Brady, Dr. Richard Inglese, Dr. Marcus Dileo, Dr. Gary French, and Dr. Sureshkunar Bhatt.  Plaintiff Timothy Wayne Murray opposes the motion.  The motion, set for hearing on February 1, 2012, is before the Court on the briefs without oral argument.  For the reasons that follow**,** Defendants' motion is **GRANTED**.

I.     BACKGROUND

Plaintiff, Timothy Wayne Murray, filed a *pro se* and *in forma pauperis* complaint pursuant to the Fifth, Eighth, and Fourteenth Amendments and to 42 U.S.C. § 1983 against the following defendants: Rodney J. Strain, Jr., individually and in his capacity as Sheriff of St. Tammany Parish; five of Sheriff Strain's deputies: Deputy Ben Godwin, Sergeant Jeremy Church, Corporal Robert Edwards, Deputy First Class Ben Sadowski, and Deputy Jeff Brady; and four staff physicians employed by Sheriff Strain with the St. Tammany Parish Jail Medical Department: Dr. Richard Inglese, Dr. Marcus DiLeo, Dr. Gary French, and Dr. Sureshkunar Bhatt.

Plaintiff seeks redress for alleged civil rights violations based on claims of excessive force and insufficient medical care. Plaintiff also raises a state law claim of battery against the deputy-defendants, and claims that Sheriff Strain should be held vicariously liable under state law for the actions of his deputies.

Plaintiff alleges the following: On or about June 18, 2009, Plaintiff was a pre-trial detainee in the St. Tammany Parish Jail ("Jail"). Plaintiff escaped from the Jail with several other inmates. On June 21, 2009, Plaintiff was spotted hiding under a log at or around the address of 12510 Highway 1078, in St. Tammany Parish. According to Plaintiff, when he was ordered by Sheriff's deputies to come from under the log, he did so with his hands held high and without resisting.

Plaintiff claims that Defendant Deputy Robert Edwards then released his canine "Flex" and ordered Flex to attack Plaintiff, even though Plaintiff "had in no way manifested anything other than a desire to surrender peacefully." As a result of the attack by Flex, Plaintiff received numerous bites to the head, arms, back, and legs. Plaintiff states that Defendant Deputy Jeremy Church then proceeded to attack him, striking Plaintiff several times in the face with his flashlight and splitting Plaintiff's lip. Defendants Jeff Brady, Ben Godwin, and Ben Sadowski are alleged to have either joined in the beating or to have witnessed it without doing anything to stop it.

According to Plaintiff, he was badly beaten, bruised, bleeding, and in need of immediate medical care at the time he was transported back to the Jail. He alleges that he was denied medical care for "at least another ten hours" before being seen by Doctor DiLeo the following morning. Plaintiff claims that there was no doctor on duty at the jail on the night of his capture, that no one was called to treat his injuries, and that an ambulance that was summoned from St. Tammany Parish Hospital was turned away by the jail authorities.

Plaintiff claims that since his capture, he has been seen by Doctors French, DiLeo, and Inglese, all of whom have refused to provide him with necessary medical care "as retribution for his escape from the jail." Plaintiff further alleges that Doctor DiLeo has "cursed the plaintiff and made obscene suggestions to him." Plaintiff asserts that as a result of the dog bites, beatings, and deliberately inadequate medical care, he has suffered and continues to suffer mental and physical pain and suffering, and has permanent scars on his face and body. He seeks compensatory and punitive damages and attorney's fees.

In their motion for summary judgment, Defendants assert that Plaintiff has failed to exhaust his administrative remedies prior to filing this lawsuit; they argue that, because such exhaustion is a legal prerequisite to filing suit, Plaintiff's claims must be dismissed. Defendants further claim that they are entitled to qualified immunity under the facts pled and the evidence tendered by Plaintiff.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. National Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion for summary judgment, the nonmoving party who bears the burden of proof at trial must come forward with evidence to support the essential

3

elements of its claim.  Id.  (citing Celotex Corp. v. Catrett, 477 U.S. 317, 321–23 (1986)). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." Celotex Corp., 477 U.S. at 323.

### III.   ANALYSIS

####   1.   Federal Claims

Defendants argue that they are entitled to summary judgment with respect to Plaintiff's federal claims because he failed to exhaust his administrative remedies before filing this lawsuit. They are correct.  Exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time.  Dillon v. Rogers, 596 F.3d 260, 272 (5th Cir. 2010).

Since the enactment of 42 U.S.C. § 1997e(a), exhaustion of administrative remedies is required before an inmate may proceed with suit.  This statute, which was enacted in 1996 by the Prison Litigation Reform Act ("PLRA"), provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

Under 42 U.S.C. § 1997e(a), a prisoner must exhaust available administrative remedies before filing a § 1983 suit and is precluded from filing suit while the administrative complaint is pending.  Clifford v. Gibbs, 298 F.3d 328, 332 (5th Cir. 2002); Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998), abrogated in part by Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (abrogating the holding that a district court may dismiss a civil complaint *sua sponte* for failure to exhaust); Wendell v. Asher, 162 F.3d 887, 891 (5th Cir. 1998); Harris v. Hegmann, 198 F.3d 153, 157 (5th Cir. 1999).  A prisoner must exhaust his administrative

4

remedies by complying with applicable prison grievance procedures before filing a suit related to prison conditions.  Johnson v. Johnson, 385 F.3d 503, 514 (5th Cir. 2004).

Federal courts have taken a strict approach to the exhaustion requirement.  For example, the United States Supreme Court held that the exhaustion requirement is "mandatory," Porter v. Nussle, 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Id. at 532.

In support of their motion, Defendants submitted the affidavit of Warden Gregory Longino.  In that affidavit, Longino detailed the administrative grievance process in place at the time plaintiff was incarcerated at the St. Tammany Parish Jail.  Inmates housed in the Jail must initially try to resolve any problems by participating in the Inmate Complaint Procedure implemented in that facility in May 2005.  Under this procedure, inmates should first discuss their issue with a Shift Supervisor; if the problem is not subsequently remedied, the inmate should then file a written complaint with the Captain of Operations.  Under the Inmate Complaint Procedure, written complaints must be answered within five (5) working days.

If an inmate's complaint is not properly addressed through the Inmate Complaint Procedure, the inmate may then proceed to the state-wide official grievance process, which is called the Administrative Remedy Procedure ("ARP").  A summary of that procedure is included in the St. Tammany Parish Jail Inmate Handbook that is given to every inmate booked into the Jail, and a full copy of the procedure can be found in the Jail's law library, which is accessible to all inmates.  Both the Inmate Complaint Procedure and the ARP were posted in every housing unit of the Jail during Plaintiff's incarceration.

The ARP is a two-step process which inmates are required to use before filing suit in

district court. La. Admin. Code tit. 22, Pt. I, § 325(D)(1). The first prong of the ARP has a time limit of forty (40) days. La. Admin. Code tit. 22, Pt. I, § 325(J)(1). The inmate commences the first step of the grievance process by writing a letter ("grievance") to the warden of his institution briefly setting out the basis for his claim and the relief sought. La. Admin. Code tit. 22, Pt. I, § 325(J)(1). The letter must either be a written communication specifically stating: "This is a request for administrative remedy" or "ARP," or must be in the particular form provided by the inmate's institution. La. Admin. Code tit. 22, Pt. I, § 325(I)(2)(a). No request for administrative remedy shall be denied acceptance in the administrative remedy procedure simply because it is or is not on an ARP form; however, no letter shall be accepted into the ARP process unless it contains the phrase "This is a request for administrative remedy." La. Admin. Code tit. 22, Pt. I, § 325(I)(2)(b). Additionally, a grievance letter must be written within ninety (90) days of the alleged event. La. Admin. Code tit. 22, Pt. I, § 325(D)(2); see also La.R.S. 15:1172B(1).

According to the affidavit of Warden Longino, under the ARP in place at the St. Tammany Parish Jail, the staff member designated the First Level Respondent is required to respond to any inmate grievance within fifteen (15) days from the date the request is referred to the warden. That step is called "First Step Review." If an inmate is not satisfied with the results of First Step Review, the inmate then has the option to appeal to the warden within five (5) days from the inmate's receipt of the response by the First Level Respondent. That step is designated "Second Step Review." The warden then has twenty-five (25) working days to reply to the inmate's appeal.

An inmate dissatisfied with the warden's response may subsequently appeal to the Secretary of the Department of Public Safety and Corrections (DPSC) by indicating that he is not satisfied in the appropriate space on the response form and forwarding it to the ARP screening

officer within five (5) days of receipt of the warden's decision. La. Admin. Code tit. 22, Pt. I, § 325(J)(2). A final decision will be made by the Secretary or designee and the offender shall be notified within forty-five (45) days of receipt. Id.

If the inmate does not receive any response from the warden to his grievance, then he is entitled to proceed and appeal to the DPSC forty (40) days after he first submitted his grievance to the warden. Id. If the inmate is not satisfied with DPSC's decision, he may then file suit in the appropriate district court. La. Admin. Code tit. 22, Pt. I, § 325(J)(2)(a). In total, no more than 90 days from the initiation to the completion of the process shall elapse, unless an extension has been granted. La. Admin. Code tit. 22, Pt. I, § 325(J)(4). Absent such an extension, expiration of response time limits shall entitle the offender to move on to the next step in the process and file suit. Id.

According to Warden Longino, Plaintiff never filed an ARP grievance concerning his claims that he was denied medical treatment while incarcerated in the St. Tammany Parish Jail or that the alleged lack of treatment was in retaliation for his escape. Defendants included as exhibits extensive records, including voluminous complaints and ARP grievances submitted by Plaintiff regarding various conditions of his incarceration.

Plaintiff's medical records do indicate that Plaintiff submitted a sick call request after he allegedly slipped and fell in the shower at the Jail in May 2010. In said request, Plaintiff inquires as to why his medication has been discontinued and suggests that he is being retaliated against based on his escape. Plaintiff also filed an inmate complaint form alleging that he was denied medical treatment following said alleged slip and fall, to which Dr. Inglese responded.

However, after reviewing Plaintiff's administrative and medical files, the Court did not find any ARP forms or grievances containing the required statutory language ("ARP" or "This is

a request for administrative remedy.") which address the claims raised by Plaintiff in this suit. It does not appear from the record that Plaintiff even filed a First Step grievance relating to his claims in the instant matter, much less that he pursued the grievance remedy through its conclusion as required by the statute.

Although Plaintiff filed a memorandum in opposition to Defendants' motion for summary judgment, he did not submit any evidence demonstrating that he exhausted his administrative remedies at the St. Tammany Parish Jail. As a result, the Court finds that no genuine issue of material fact remains in dispute concerning Plaintiff's failure to comply with 42 U.S.C. § 1997e(a). That is fatal to his federal claims, because the United States Fifth Circuit Court of Appeals has held:

> Absent a valid defense to the exhaustion requirement, the statutory requirement enacted by Congress that administrative remedies be exhausted before the filing of suit should be imposed. To hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation.

Wendell v. Asher, 162 F.3d 887, 890–91 (5th Cir. 1998) (citations omitted).

Therefore, it is appropriate to dismiss Plaintiff's federal claims without prejudice, but with prejudice for the purpose of proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915. See Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998); Wiley v. Mangrum, 146 Fed. App'x 757 (5th Cir. 2005); Johnson v. Travis, Civ. Action No. 07–213, 2007 WL 1433896, at *2 (E.D.La. May 14, 2007).

    **2.    State Law Claims**

Plaintiff's federal claims are dismissed based on his failure to exhaust his administrative remedies; therefore, the Court declines to exercise supplemental jurisdiction over his state law claims. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental

jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."); see also Jackson v. Mizzel, 361 Fed. App'x 622, 627 (5th Cir. 2010) ("Because [the plaintiff] states not one valid federal claim, the district court properly declined jurisdiction over his Louisiana causes of action."); Bass v. Parkwood Hospital, 180 F.3d 234, 246 (5th Cir. 1999) ("When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims."). The Court finds that it is appropriate to dismiss Plaintiff's state law claims without prejudice.

### IV.     CONCLUSION

Accordingly;

**IT IS ORDERED** that the **Motion for Summary Judgment Pursuant to Rule 56(b) of the Federal Rules of Civil Procedure (Rec. Doc. 47)** filed by Defendants is **GRANTED**.

This 7th day of March, 2012.

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE